The evidence of the plaintiff and the defendant, who are brothers, given for the defendant, was that while the money had been loaned, the defendant had afterwards paid it to their brother-in-law on the consent of the plaintiff, and under an arrangement that it was a loan by the plaintiff to the brother-in-law, and that the latter would pay it to the plaintiff. The only dispute between them was over this matter. There is no evidence in the case to support the finding that the settlement of the action was fraudulent as against the plaintiff's attorney, i. e., there is no evidence that instead of settling the case without the payment of anything by the defendant to the plaintiff, the amount sued for, or any amount, was paid, and the fact fraudulently concealed from the attorney.

Finally, there is no evidence in the case to support a finding that the defendant owed the money to the plaintiff when the action was brought. The attorney, having lost his client, testified that when he served the summons and complaint on the defendant he said to him, "Now you know that you borrowed from your brother and he loaned you $500, which is claimed. Now what is the use of your fighting with your brother and incurring expenses?" and that he replied, "Well, I will see about it;" and that afterwards the plaintiff and the defendant came to his office and told him that they were going to settle, and that he said to the defendant, "You know that you owe it." Whether the defendant made any response to this he does not say. The jury were permitted to find that there were admissions by the defendant that he owed the money. They were not admissions. The lack of evidence on the plaintiff's side was not supplied on the defendant's. On the contrary, the testimony for the defendant makes out the defense of payment pleaded in the answer.

The judgment should be reversed.

―――――

CAVANAGH v. CENTRAL NEW ENGLAND RY. CO.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

1. MASTER AND SERVANT (§ 236*)—INJURIES TO SERVANT—DUE CARE OF SERVANT.

Plaintiff, a railway employé, and his foreman, who were waiting for a train to take them home after their day's work, took refuge from the rain in a box car near the depot, which was on a track adjoining the one on which the train was to come. The foreman, hearing the train coming, announced its coming to plaintiff, and left the car by a ladder which was within 2½ feet of the rail of the main track, and plaintiff, without taking the precaution to learn how near the train was, followed him, backing down the ladder, and was struck by the train. Held, that he was negligent, precluding recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 683, 723–742; Dec. Dig. § 236.*]

2. MASTER AND SERVANT (§ 182*)—INJURY TO SERVANT—AUTHORITY OF SUPERINTENDENCE.

Even if the foreman's announcement that the train was coming was an invitation to plaintiff to alight from the car when it was unsafe to do so, the master would not be liable, as, their day's work being finished,

―――――

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff and the foreman·were not engaged in the performance of any duty to the master, so that the foreman had no authority over plaintiff; and Laws 1906, p. 1682, c. 657, which provides that a railway employé, intrusted with authority of superintendence of another injured employé in the performance of his duty, is not a fellow servant of the injured employé, changes the fellow-servant rule only where the negligence charged is due to the superintendent in directing the performance of duties, and not where the servant and superintendent may act independently.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 182.*]

Appeal from Trial Term, Duchess County.

Action by Martin Cavanagh against the Central New England Railway Company. From a judgment for plaintiff, and an order denying à new trial, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, GAYNOR, BURR, and RICH, JJ.

Charles M. Sheafe, Jr., for appellant.

Charles Morschauser, for respondent.

WOODWARD, J. The plaintiff in this action was a mason's helper, employed by the defendant in building culverts along its railroad line. He lived at Rhinecliff, some 18 miles from the point where he was at work on the 6th day of May, 1907. For a period of 10 days he had been coming to his work on one of the defendant's trains, returning in the evening upon the same train running in the opposite direction. On the day of the accident the plaintiff quit work about 3 o'clock in the afternoon, and, with a small number of fellow employés, took a hand car for Elizaville, at which point he intended taking the train for Rhinecliff. It was raining, and one Kearns, who is referred to as "plaintiff's boss," and who appears to have been the foreman in charge of the culvert builders, suggested or directed that the plaintiff go into a house car standing near the station to await the coming of the train. It does not appear why the plaintiff was sent to the box car rather than to the station, only 56 feet away, or why he was not sent to the toolhouse, directly opposite the station; nor does it appear that Kearns had any possible authority over the plaintiff at this time, the work of the day being over. But the plaintiff entered this house car, which appears to have been used by two of the defendant's employés, in company with Kearns. When the train was within a half a mile of the station the engineer says he blew the whistle, and it is not disputed that Kearns announced to the plaintiff that the train was coming, and left the car by the side door, opening directly upon the track on which the train was approaching, and that the engineer blew several short blasts upon the whistle when he discovered Kearns getting into a dangerous position. Kearns got down and out of the way, and the plaintiff, knowing the location of this car with reference to the track, knowing that the train was coming, backed out of the side door and down a ladder, which the occupants of the car had borrowed for their own convenience, and while he was descending this short ladder, or just as he had reached the ground, he was struck by the engine, at that time coming to a standstill at the station only 56 feet away, receiving the

injuries for which he has recovered a verdict for $500.  A number of acts or omissions were suggested on the part of the defendant, but the question finally submitted to the jury was:

"Did this defendant, knowing, or having reason to know, that this house car was used on the side track, and that a ladder was used from it to the ground within 2½ feet of the main rail, and used morning and night by men who lived in the house car—did they use due, ordinary, and common care in operating a train so close to the ladder, knowing the use the ladder was put to?"

While the plaintiff testified that he did not hear the train coming, the testimony of the engineer, corroborated by others, is uncontradicted that the whistle was blown a quarter of a mile before reaching the station, that the bell was rung continuously as the train approached the station, and that several blasts were blown as a warning to Kearns, who immediately preceded the plaintiff down the ladder.  What more the defendant was called upon to do does not suggest itself to our mind.  This house car was not placed where it was for the use of employés generally.  It was there for the purposes of the two employés who actually occupied it.  There were three other doors to the car, entirely out of danger, and, while it is claimed that these doors were fastened, there is no evidence that they were fastened by the defendant, or that it had any reason to suppose that the door next to the main track would be made use of, even by those who were occupying the car, much less by an employé who was merely in the car for his own purposes.  The defendant had provided a depot for the accommodation of passengers, the plaintiff was awaiting the coming of a train, and just why the defendant should have taken any extraordinary precautions to protect him does not appear.

But, aside from the question of the defendant's negligence, the case is barren of any evidence from which the inference can be properly drawn that the plaintiff exercised any reasonable degree of care.  He was awaiting the coming of this very train.  Kearns was with him in the car, and had announced the coming of the train, and had himself preceded the plaintiff down this ladder, and had been warned by the blowing of the whistle.  Assuming that the plaintiff did not hear the train, he had been told that it was coming.  Assuming that he did not hear the whistle blown for Kearns, he was aware that the train was coming, and yet he testifies that he backed down this ladder, without, so far as appears, taking the slightest precaution to learn for himself whether the train was near or not.  The suggestion that the plaintiff was invited to alight from this car by Kearns at a time when it was unsafe for him to do so, and that this invitation on the part of Kearns involved the defendant in liability, is absurd.  The time has not yet come when it is the duty of employers to provide nurses or guardians for employés.  At the time in question Kearns, if he had invited the plaintiff, was not in a position to command him in any possible sense.  Neither Kearns nor the plaintiff was engaged in the performance of any duty which they owed to the defendant.  They were merely waiting for a train to take them home after the day's work was completed, and the most that chapter 657, p. 1682, of the Laws of 1906, attempts to do is to provide that:

"It shall be held in such actions that persons engaged in the service of any railroad corporation, foreign or domestic, doing business in this state, * * * who are intrusted by such corporation * * * with the authority of superintendence, control or command of other persons in the employment of such corporation * * * or with the authority to direct or control any other employé in the performance of the duty of such employé, * * * are not fellow servants of such injured or deceased employé."

It is only where the negligence complained of is due to the superintendent in directing the performance of duties that the rule is changed, and not where the parties are in a position to act independently. Here the plaintiff was not discharging any possible duty to the defendant. He was as free to stay in the car or to depart from it as any other third person would have been, and he certainly owed the same obligation to look out for the obvious dangers of his situation that Kearns did. The latter, if he had been killed, could not have held the defendant liable. How is the plaintiff in any better position?

The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.